NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUDEL CORPORATION, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HEARTLAND PAYMENT SYSTEMS, INC.,<br><br>    Defendant. | Civ. No. 16-2229<br><br>OPINION |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter is before the Court upon Defendant Heartland Payment Systems, Inc.'s ("Defendant") motion to dismiss and strike the plaintiff's demand for a jury trial. (ECF No. 7). Plaintiff Rudel Corporation ("Plaintiff") opposes the motion. (ECF No. 12). The Court has decided the motion based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

### BACKGROUND

This case concerns a contract for credit card processing services, and Defendant's alleged breach of that contract. Plaintiff's allegations are as follows: Defendant is the fifth largest payment processor in the country. (Compl. at ¶ 40, ECF No. 1). Defendant processes credit card transactions for merchants, with a focus on small and medium-sized merchants. (*Id.* at ¶¶ 24, 26). Plaintiff is a corporation that does business as Jacala Mexican Restaurant. (*Id.* at ¶ 18).

1

Jacala Mexican Restaurant is a family-run business that has been in business in San Antonio, Texas for many years.  (*Id.* at ¶ 20).  During the relevant time period for this lawsuit, Plaintiff used Defendant to process its credit card transactions.

The fees for credit card transactions are complex.  One transaction results in multiple fees, some of which go to the bank that issued the credit card, some of which go to the credit card associations (such as Visa or American Express), and some of which go to Defendant.  (*Id.* at ¶ 33).  When customers swipe their credit cards, Defendant deducts and distributes all of the various fees to the different parties.  (*See id.* at ¶ 25).  Historically, credit card processors like Defendant have been opaque about which fees are actually going to which party.  (*Id.* at ¶ 36).  Defendant has specifically advertised itself to merchants as a more transparent credit card processor.  (*Id.* at ¶¶ 50-52).  Defendant shows customers: 1) the "interchange fees" going to the credit card companies, which neither Plaintiff nor Defendant can negotiate, and 2) Defendant's fee for processing each transaction.  (*Id.* at 49).

In Spring 2014, American Express offered a new program with many benefits, including lower interchange fees.  (*Id.* at ¶ 63).  On June 13, 2014, Defendant sent a letter to Plaintiff and other proposed class members announcing the new American Express program.[1]  (*Id.* at ¶ 60).  The letter stated that Defendant would charge Plaintiff a new, lower rate for all American Express transactions.  (*Id.* at ¶ 63).  This would pass on the savings from the lowered interchange fees to Plaintiff.  (*Id.*).

Defendant's new lower rate increased the volume of American Express transactions that Defendant got to process.  (*Id.* at ¶ 68).  The lower rate lasted until October 2014.  (*Id.* at 70).  On Plaintiff's October account statement, Defendant stated that it had "incorrectly calculated the

---

[1] All of the following allegations relate to both Plaintiff and all proposed class members, but this opinion will refer to "Plaintiff" for simplicity's sake.

rates for the new American Express Card Acceptance program.  We are adjusting the rates to correct our miscalculation." (*Id.* at ¶ 77).  Defendant then increased its rate for American Express transactions going forward, *and* retroactively charged Plaintiff the increased rate going back to July 2014, when the lower rate had gone into effect.  (*Id.* at ¶ 70, 81).  This retroactive fee amounted to $255.44 for Jacala Mexican Restaurant.  (*Id.* at ¶ 70).

Plaintiff highlights that the increased rate was a fee that Defendant had set; it was not an American Express fee.  (*Id.* at ¶ 79).  Plaintiff alleges that the "miscalculation" language was a misrepresentation.  (*Id.* at ¶ 78).  Defendant simply "implemented a bait and switch technique" wherein Defendant promised to pass on the interchange fee savings to Plaintiff through the new lower rate, but then actually kept the savings for itself.  (*Id.* at ¶ 63).  Plaintiff suggests the aim of this bait and switch was to increase Defendant's revenues during a specific time period when Defendant was attempting to make itself an attractive merger candidate or acquisition target.  (*Id.* at ¶ 46).  Defendant was successful in boosting its total card processing 9.8% in part due to the new American Express program and purported lower rate.  (*Id.* at ¶ 67).

In April 2016, Plaintiff filed a complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the New Jersey Consumer Fraud Act, and unjust enrichment.  (*Id.* at 21-27).  Defendant moved to dismiss the complaint, and to strike Plaintiff's demand for a jury trial.  (ECF No. 7).  This motion is presently before the Court.

## **LEGAL STANDARDS**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must

'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159 (3d Cir. Jan. 11, 2016).  However, the court may disregard any conclusory legal allegations.  *Fowler*, 578 F.3d at 203.  Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed.  *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

When deciding a motion to dismiss, district courts may not consider documents that are extraneous to the pleadings.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  However, "a document *integral* to or *explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Plaintiff's breach of contract claims are based on the parties' agreement, the Merchant Processing Agreement ("MPA").  (Compl. at ¶¶ 105-14, ECF No. 1; Def. Ex. A, ECF No. 7-2).  Additionally, Plaintiff explicitly relies upon Defendant's June 13, 2014 letter announcing the new lower rate, and upon Defendant's "miscalculation" statement on its October billing statement.  (Compl. at ¶¶ 60, 77, ECF No. 1; Def. Ex. B, H, ECF No. 7-2).  Therefore, the Court will consider these three documents.

Defendant makes a number of arguments to support its motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  The Court will address each argument in turn.

4

## I.      Count I – Breach of Contract

To state a claim for breach of contract, a party must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  Defendant's first argument is that Plaintiff's breach of contract claim fails because Defendant did not breach the MPA.

Plaintiff accuses Defendant of two separate breaches: Defendant raised its American Express processing rate without the fifteen day notice required by the MPA, and the MPA did not permit Defendant to retroactively raise the fee.  (Compl. at ¶ 105, ECF No. 1).  Defendant states that the fee was raised "well after the fifteen day notice period."  (Def.'s Br. at 14, ECF No. 7-1).  Thus, Defendant simply disagrees with the facts alleged in the complaint.  Plaintiff alleges that "Heartland did not wait fifteen days before implementing its increased fee."  (Compl. at ¶ 113, ECF No. 1).  Plaintiff notes that 206 of its 211 American Express transactions in November were charged at the new rate, suggesting there was almost no gap between the October 31st notice and the rate change.  (*See id.* at ¶ 113).  This allegation is sufficient to demonstrate that Plaintiff has a plausible claim for relief.  *Fowler*, 578 F.3d at 211.  Therefore, the claim will not be dismissed on this basis.

Defendant argues that it did not breach the contract via the retroactive fee because the retroactive fee was permitted by the MPA.  Defendant points to two provisions in the contract that purportedly permitted the fee: Paragraphs 6.6 and 15.14.  Neither provision expressly grants Defendant the ability to charge the type of retroactive fee at issue here.  The Court finds that the MPA is sufficiently ambiguous that the issue cannot be resolved at the motion to dismiss stage. *See Bat Blue Corp. v. Situs Holdings, LLC*, No. 15-8513, 2016 WL 3030814, at *3 (D.N.J. May 26, 2016) (declining to decide an issue at the motion to dismiss stage because the relevant

contract term was ambiguous); *Educ. Impact, Inc. v. Danielson*, No. 14-937, 2015 WL 381332, at *8 (D.N.J. Jan. 28, 2015) (same).  Therefore, the breach of contract claim will not be dismissed on this basis.

Defendant next argues that Plaintiff failed to perform its own contract obligations, which is the fourth requirement for a breach of contract claim.  *Frederico*, 507 F.3d at 203.  Defendant points to MPA Paragraph 4.29, which requires that merchants dispute debits imposed by Defendant within 45 days.  (Def.'s Br. at 12, ECF No. 7-1).  It is undisputed that Plaintiff did not object to the new or retroactive fees within 45 days.  However, Paragraph 4.29 is largely concerned with "chargebacks," the debits that occur when a customer challenges a charge and the credit card company credits the money back to the customer.  (Pl.'s Br. at 14 n.4, ECF No. 12).  It is not clear whether or not the provision would cover the fees at issue in this case. Therefore, the Court will decline to resolve this issue of ambiguous contract interpretation, and Plaintiff's claim will not be dismissed on this basis.

Lastly, Defendant argues that Plaintiff's breach of contract claim is precluded by the voluntary payment doctrine.  This doctrine dictates that "where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible [sic] against him, he cannot recover it back."  *Matter of New Jersey State Bd. of Dentistry*, 423 A.2d 640, 643 (N.J. 1980).  Defendant argues that "Plaintiff was in possession of all the facts it needed to determine whether to challenge the one-time charge at the time it was made and failed to do so," and was not under any duress, so the doctrine should bar Plaintiff's claim.  (Def.'s Br. at 16, ECF No. 7-1).  Whether Plaintiff had all the necessary facts when it paid the retroactive fee is a factual dispute that is inappropriate to resolve upon a motion to dismiss.  *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).  Plaintiff argues it could not possibly have had all the relevant facts because the October bill, which contained the retroactive fee and the notice about

the "miscalculation," falsely implied that it was the American Express fee that had been miscalculated, not Defendant's own fee.  (Pl.'s Br. at 19, ECF No. 12).  Plaintiff was not able to see which fee had changed until the November bill arrived a month later.  (*See* Compl. at ¶ 113, ECF No. 1).  Since a court may not dismiss a claim under the voluntary payment doctrine unless the complaint establishes that the payment was truly voluntary and not based on a mistake of fact, Plaintiff's claim will not be dismissed on this basis.  *Simonson v. Hertz Corp.*, No. 10-1585, 2011 WL 1205584, at *3 (D.N.J. Mar. 28, 2011).

Defendant's challenges to Plaintiff's breach of contract claims are all based on disputed facts or ambiguous contractual provisions.  While none of these arguments can prevail on a motion to dismiss, Defendant may renew these arguments on a motion for summary judgment if it so chooses.

## II.   Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing.  *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010).  Defendant argues that the claim for a breach of the implied covenant of good faith and fair dealing should be dismissed because Plaintiff fails to allege an improper motive.  (Def.'s Br. at 20, ECF No. 7-1).  A plaintiff must allege a "bad motive or intention" when pleading a breach of the implied covenant of good faith and fair dealing.  *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 396 (N.J. 2005); *see also Angel Jet Servs., LLC v. Borough of Woodland Park*, No. 10-6459, 2012 WL 5335830, at *4 (D.N.J. Oct. 26, 2012).  It is insufficient to simply allege that a defendant's discretionary actions benefitted the defendant and disadvantaged the plaintiff.  *Angel Jet Servs.*, 2012 WL 5335830, at *4.  However, the claim may succeed if a plaintiff alleges that its reasonable expectations were destroyed, and

the defendant acted "with ill motives and without any legitimate purpose." *Brunswick Hills Racquet Club*, 864 A.2d at 396.

Contrary to Defendant's assertions, Plaintiff does not merely plead that Defendant acted to legitimately maximize its profits.  Plaintiff alleges, in some detail, how Defendant was being financially pressured and undercut by certain competitors.  (Compl. at ¶¶ 43-45).  Plaintiff alleges that because of these pressures, Defendant was attempting to make itself an attractive merger candidate or acquisition target during the relevant time period.  (*Id.* at ¶ 46).  Therefore, Plaintiff alleges that Defendant engaged in a "bait and switch" maneuver where it promised to pass the American Express savings on to merchants, thereby significantly raising its American Express processing volume, only to later reverse course and retroactively reclaim the savings for itself.  (*Id.* at ¶¶ 63, 67-68).  These allegations detail an ill motive for Defendant's actions.  Therefore, the Court will not dismiss Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing at this point.

### III.     Count III – New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA") protects consumers from unconscionable and fraudulent practices in the marketplace.  *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012).  To state a claim under the CFA, a consumer must allege: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss."  *Id.* (quoting *Payan v. GreenPoint Mortgage Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)).  Defendant makes a number of arguments regarding Plaintiff's CFA's claim.

First, Defendant argues that its conduct was not "unlawful."  (Def.'s Br. at 26, ECF No. 7-1).  There are three categories of "unlawful" actions under the CFA: "(1) affirmative acts, (2) knowing omissions, and (3) regulation violations."  *Bianchi v. Lazy Days R.V. Ctr., Inc.*, No. 06-

1979, 2007 WL 1959268, at *4 (D.N.J. July 5, 2007) (quoting N.J. Stat Ann. §§ 56:8-2, 56:8-4).

"The prime ingredient underlying all types of unlawful conduct is the capacity to mislead."

*Mickens*, 900 F. Supp. 2d at 435 (quoting *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282,

296 (D.N.J. 2009) (internal quotation marks omitted)).  Plaintiff points to the "bait and switch"

scheme discussed above as evidence of Defendant's unlawful conduct.  (Pl.'s Br. at 30, ECF No.

12).  Defendant again takes issue with Plaintiff's allegations in a manner that is more appropriate

to a motion for summary judgment than a motion to dismiss.  Defendant asserts that "there is no

well-pleaded allegation that [Defendant] did not intend to act in accordance with his statement

when he made it."  (Def.'s Br. at 30, ECF No. 7-1).  However, as explained above, Plaintiff's

allegations about the "bait and switch" and Defendant's motives are sufficiently detailed to

survive a motion to dismiss, as they are not "naked assertions devoid of further factual

enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

(2007) (internal quotation marks omitted)).

   Second, Defendant argues that Plaintiff failed to allege the third element of a CFA claim,

"a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable

loss."  *Mickens*, 900 F. Supp. 2d at 435.  Contrary to Defendant's assertion, the CFA does not

contain a reliance requirement.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir.

2012).  However, the CFA does require that plaintiffs show there is a causal link between their

loss and "the [defendant's] conduct that the CFA seeks to punish."  *Id.* (quoting *Bosland v.*

*Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009)).  Plaintiff argues that this link is fulfilled

by the fact that Defendant reneged on its false promise of a lower rate for American Express

transactions, and Plaintiff therefore paid "bogus" retroactive and prospective fees.  (Pl.'s Br. at

35, ECF No. 12).  However, the "conduct that the CFA seeks to punish" is not simply charging

more fees, it is the fraudulent "bait and switch" that Plaintiff highlighted as the unlawful conduct

at issue.  (Pl.'s Br. at 30, ECF No. 12).  Plaintiff does not plead that Defendant's "bait and

switch" caused its loss.  Plaintiff was a customer of Defendant before and after the allegedly

false promise, and did not apparently change its conduct in any way because of the promise.

Other merchants who previously did not accept American Express may have started to accept

American Express because of Defendant's promise, but not Plaintiff.

There is a single paragraph in the complaint that states:

> Plaintiff and the Class relied upon Heartland's representations and processed
> American Express transactions through Heartland because Heartland had falsely
> represented that the rates would be the same as the rates for MasterCard and Visa,
> only to then charge merchants rates that were higher than MasterCard and Visa and
> also retroactively charging merchants rates that were higher than the rates for
> MasterCard and Visa.

(Compl. ¶ 86, ECF No. 1).  This paragraph appears to be geared towards the proposed class, not

towards Plaintiff.  Plaintiff does not allege that it only started accepting American Express after

the letter announcing a lower rate, or that it encouraged its customers to use American Express

more after the letter, or that it continued to use Defendant's services because of the letter.

Rather, it appears that Plaintiff accepted American Express via Defendant's services before the

letter was sent.  (Def.'s Ex. C, ECF No. 7-2).  Since Plaintiff fails to plead a causal link between

its loss and Defendant's allegedly duplicitous behavior, Plaintiff cannot meet the third

requirement for a CFA claim.  Consequently, Plaintiff's CFA claim will be dismissed.  The

Court therefore does not reach Defendant's additional arguments addressing the CFA claim.

## IV.     Count IV – Unjust Enrichment

Under New Jersey law, a claim of unjust enrichment has two essential elements: "(1) that

the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by

the defendant is inequitable."  *Canadian Nat. Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1034

(D.N.J. 2011) (quoting *Wanaque Borough Sewerage Auth. v. West Milford*, 677 A.2d 747 (N.J.

1996)).  Since unjust enrichment is a quasi-contractual claim, it may not be pursued "when a valid, unrescinded contract governs the rights of the parties."  *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).  Defendant argues that Plaintiff may not claim unjust enrichment because the MPA governs the rights of the parties.  (Def.'s Br. at 38, ECF No. 7-1).

The retroactive fee is at the heart of Plaintiff's complaint, and the two sides strongly contest whether the MPA permits Defendant to charge such a fee.  As discussed above in Part I, the Court will not interpret an ambiguous contract at the motion to dismiss stage.  On the face of the contract, it is unclear whether or not the MPA "governs the rights of the parties" as to the retroactive fee, or if it is simply silent on the issue.  Plaintiff acknowledges that it may not recover on a quasi-contractual unjust enrichment claim *and* a breach of contract claim, but Plaintiff wishes to plead both in the alternative.  (Pl.'s Br. at 39, ECF No. 12).  Given the early stage of the case, and the uncertainty as to the relevance of the MPA on this point, Plaintiff's alternative unjust enrichment claim will not be dismissed.  *Kancor Americas, Inc. v. Atc Ingredients, Inc.*, No. 14-4107, 2015 WL 1530740, at *3 (D.N.J. Apr.6, 2015) (denying motion to dismiss an unjust enrichment claim despite a concurrent breach of contract claim because plaintiffs may plead alternative causes of action); *Simonson*, 2011 WL 1205584, at *7 (stating that unjust enrichment claims and breach of contract claims are regularly both allowed to proceed at the pleading stage because dismissal of one of the claims could be premature); *see also* Fed. R. Civ. P. 8(d)(2) (allowing parties to plead in the alternative).

### V.     Defendant's Motion to Strike Plaintiff's Jury Demand

A jury trial waiver is valid only if it was made knowingly and voluntarily.  *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007).  Courts will find a waiver was knowing and voluntary when: "(1) there was no gross disparity in bargaining power between the parties, (2) the parties are sophisticated business entities, (3) the parties had an opportunity to

negotiate the contract terms, and (4) the waiver provision was conspicuous." *McPeak v. S-L Distribution Co.*, No. 12-348, 2014 WL 4388562, at *5 (D.N.J. Sept. 5, 2014) (citation omitted). Defendant argues that Plaintiff waived its right to a jury trial when it signed the MPA. (Def.'s Br. at 39, ECF No. 7-1). Plaintiff counters that there was a gross disparity in bargaining power between the parties, there was no opportunity to negotiate, and the waiver provision was not conspicuous. (Pl.'s Br. at 40, ECF No. 12). Defendant disputes these facts, arguing that Plaintiff could have negotiated the provision if it wished to, and the waiver was clearly located in the "Jurisdiction & Venue" portion of the MPA. (Def.'s Reply Br. at 15, ECF No. 13).

Courts that have applied the "knowing and voluntary" factors usually resolve the issue with a more developed record, at a later stage of the case. *McPeak v. S-L Distribution Co.*, No. 12-348, 2014 WL 4388562, at *6 (D.N.J. Sept. 5, 2014). While it is clear that Defendant is a larger company than Plaintiff, and there was a jury waiver provision in the MPA, the Court does not currently have enough facts to evaluate all the factors that speak to whether Plaintiff's waiver was knowing and voluntary. Therefore, Defendant's motion will be denied at this time.

## CONCLUSION

For the reasons discussed above, Defendant's motion will be granted in part and denied in part. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: August 23, 2016