NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUDEL CORPORATION, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HEARTLAND PAYMENT SYSTEMS, INC.,<br><br>Defendant. | Civ. No. 16-2229<br><br>**OPINION** |

RECEIVED
OCT 04 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

## INTRODUCTION

Before the Court is Plaintiff's motion for preliminary approval of class settlement and class certification. (ECF Nos. 50, 51.) The motion is unopposed. The Court has reviewed the moving papers and the proposed settlement agreement, and has decided the motion without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, the unopposed motion for preliminary approval of the settlement agreement and class certification is granted.

## BACKGROUND

Plaintiff Rudel Corporation ("Plaintiff") brings this putative class action against Defendant Heartland Systems, Inc. ("Defendant") for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff runs Jacala Mexican Restaurant in San Antonio, Texas. (Compl. ¶ 20, ECF No. 1.) Defendant processes credit and debit card payments for small-to-medium-sized merchants. (Compl. ¶¶ 2, 24–26; Pl.'s Br. at 3, ECF No. 51.) Plaintiff's restaurant contracted with Defendant to process its credit and debit card transactions from 2008 to 2014. (Compl. ¶ 21.)

1

Plaintiff alleges that in 2014 American Express introduced a new program, "OptBlue," that made it less expensive for merchants to accept American Express cards. (Compl. ¶¶ 57–59; Pl.'s Br. at 3.) In June 2014, Defendant sent a letter to its merchants that Defendant would process American Express cards with the smaller fees already associated with Visa and Mastercard. (Compl. ¶¶ 60–62.) Between July 1, 2014 and October 31, 2014, Defendant charged American Express fees at this discounted rate. (Compl. ¶¶ 64–68; Pl.'s Br. at 3–4.) In October 2014, Defendant retroactively charged Plaintiff an "American Express Fee Adjustment" of $255.44, without prior written agreement or notice; other class members experienced similar charges. (Compl. ¶¶ 69–74.) Defendant represented that this charge was an adjustment to correct a miscalculation. (Compl. ¶¶ 77–78; Pl.'s Br. at 4.) Plaintiff alleges this purported correction was, instead, an improper rate increase which violated the uniform contract between Defendant and the merchants in the putative class. (Compl. ¶¶ 79–88; Pl.'s Br. at 4–5.)

Plaintiff filed its Complaint in April 2016. (ECF No. 1.) Defendant moved to dismiss (ECF No. 7), which the Court granted in part as to Plaintiff's claim under the New Jersey Consumer Fraud Act but otherwise denied (ECF Nos. 14, 15). After Defendant answered (ECF No. 16), the parties entered discovery. On April 21, 2017, Plaintiff moved to certify the class. (ECF Nos. 26, 27.) The Court then appointed the Hon. William G. Bassler as a mediator, staying proceedings (ECF No. 29) and administratively terminating pending motions (ECF No. 30). After an unsuccessful mediation, Plaintiff renewed its motion to certify class on June 22, 2017. (ECF Nos. 33, 34.) Both parties then moved for summary judgment. (ECF Nos. 35, 36, 43.) Before those motions could be decided, the parties informed the Court on August 7, 2017 that they had reached an amicable agreement after another round of mediation before Judge Bassler. (ECF No. 46.) The Court administratively terminated pending motions on August 9, 2017 and

ordered the parties to submit a preliminary approval of settlement within 30 days. (ECF No. 47.) On September 22, 2017, Plaintiff submitted the unopposed motion for preliminary approval now before the court. (ECF Nos. 50, 51.)

**DISCUSSION**

I.  Preliminary Approval of the Class Action Settlement

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing. Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) (internal citation omitted). Preliminary approval is not binding and should be granted unless the settlement is "obviously deficient." *Mazon v. Wells Fargo Bank, N.A.*, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011); *Jones*, 2007 WL 2085357, at *2. Proposed settlements are generally preliminarily approved when they emerge from serious, non-collusive negotiations, do not give preferential treatment to certain segments of the class or class representatives, and fall within the range of possible approval. *Mazon*, 2011 WL 6257149, at *1; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197–98 (E.D. Pa. 2014). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Mazon*, 2011 WL 6257149, at *1 (quoting *Manual for Complex Litigation, Third*, § 30.42 (West 1995)); *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008).

The proposed settlement agreement here meets the not "obviously deficient" standard.

3

*Mazon*, 2011 WL 6257149, at \*2; *Jones*, 2007 WL 2085357, at \*2. First, the proposed settlement was reached after discovery and through arm's-length negotiations between experienced counsel for Plaintiff and Defendant. (Pl.'s Br. at 9–12.) Attorneys for both parties are experienced in similar class action litigation. (*Id.* at 10–11.) The negotiations transpired over two months and included mediation before retired federal judge the Hon. William G. Bassler. (*Id.* at 10.) Discovery was thorough enough that both parties moved for summary judgment, but also that Plaintiff acknowledged the limitations of litigation due to Defendant's asserted defenses. (*Id.* at 10, 12.) All told, these arm's-length negotiations create a presumption of fairness.

Second, the proposed settlement provides the class with reasonable and adequate relief. Plaintiff acknowledges that the proposed settlement will not fully compensate class members, but emphasizes it will provide each class member with a monetary award. (Pl.'s Br. at 11–12; Settlement Agreement, Ex. 1 at 2, ECF No. 50-1 ("The Allocation Formula will distribute the New Settlement Fund to eligible class members according to a ratio . . . .").) Defendant admitted in discovery that the total revenue derived from the alleged improper fee increase was more than $7,000,000, affecting 80,000 merchants. (Fearon Decl. ¶¶ 11–12, ECF No. 50-1; Settlement Agreement ¶¶ 51–52, ECF No. 50-1; Pl.'s Br. at 1, 4, 13–14.) The proposed settlement fund is $2,500,000, and before the fund is allocated to class members it will be reduced by counsel costs and fees, settlement administration fees, and a potential service award to the class representative.[1] (Pl.'s Br. at 6–7.) Plaintiff emphasizes that the fact that Defendant has already identified the affected merchants and relevant fees will streamline the process and improve the

---

[1] Defendant has agreed not to contest counsel's request for fees up to one-third the settlement fund amount ($833,333.33) as well as reasonable expenses. (Settlement Agreement ¶ 58.) Furthermore, class counsel intends to ask the Court to approve a service award of $15,000 for the class representative. (*Id.* ¶ 60.) The Court withholds judgment on the reasonable amount of payments to the class representative and class counsel, which are subject to later approval.

chances of actual compensation for class members, favoring approval of the settlement. (Pl.'s Br. at 11–12.) Given the nature of preliminary approval review, the Court finds the settlement relief falls within the range of approval.

Finally, the proposed settlement does not appear to unreasonably favor the class representative or any segment of the class. Indeed, the nature of Plaintiff's claims are indistinct from the claims of other class members, and nothing in the Settlement Agreement divides the proposed settlement class into segments. Finding no reason at this juncture to question the fairness of the settlement, which was reached after negotiation between experienced counsel and mediated by a respected retired jurist, the Court grants preliminary approval to the settlement.

## II. Certification of the Settlement Class

The Court must next consider whether the requirements for class certification are met. A class may be certified pursuant to Federal Rule of Civil Procedure 23(a) when

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to these requirements, when the plaintiffs are primarily seeking legal relief, certification is proper only where "questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as "predominance" and "superiority," respectively. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). The plaintiff bears the burden of proving that the requirements of Rule 23 are satisfied. *Id.* at 311–12. These prerequisites are not mere pleading requirements; the Court must

5

determine that each Rule 23 requirement is satisfied by a preponderance of the evidence. *Id.* at 309 ("Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982))).

The proposed settlement class is defined in Section II, ¶ 30 of the proposed Settlement Agreement as "Merchants who processed with Heartland and were subject to an American Express Fee Adjustment in their October 2014 account statements, retroactively implementing an increased American Express Discount Fee between the period of July 1, 2014 and October 31, 2014 and setting new American Express pricing going forward." (Settlement Agreement ¶ 30.) This class meets the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and likewise meets the Rule 23(b) requirements of predominance and superiority.

*A. The Rule 23(a) Requirements*

**Numerosity:** "Courts in the Third Circuit generally hold that classes of close to one hundred members are sufficient." *Smith*, 2007 WL 4191749, at *3 (citing *Jones*, 2007 WL 2085357, at *3; *Weiss v. York Hosp.*, 745 F.2d 786, 808 n.35 (3d Cir. 1984)). Discovery in this case revealed that 80,000 merchants were affected by the fee adjustment disputed by Plaintiffs. (Pl.'s Br. at 1, 13–14). Numerosity is easily satisfied here.

**Commonality:** "The commonality requirement is satisfied if the named plaintiff shares at least one question of fact or law with the complaints of the prospective class." *Smith*, 2007 WL 4191749, at *3 (citing *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001)). Here, Plaintiff argues that Defendant violated a uniform standardized contract— the Merchant Processing Agreement—and all the legal and factual questions arising out of this standard contract are common among the class. Plaintiff's brief outlines questions including

whether the contract permitted the rate change, whether there was notice, whether any notice sufficed, whether Defendant acted in bad faith, and whether Defendant was unjustly enriched. (Pl.'s Br. at 14.) These common questions satisfy the commonality requirement.

**Typicality:** "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jones*, 2007 WL 2085357, at *3. Again, the alleged conduct here is common across all class members, including Plaintiff. Being subject to the fee increase and standard contract of which Plaintiff complains is the defining characteristic for merchants to be eligible as class members. Moreover, Plaintiff's theory of recovery and of Defendant's liability is identical to those that could be brought on behalf of the class. Typicality is therefore satisfied.

**Adequacy of representation:** "Adequacy of representation is a two-part inquiry that applies to both Plaintiff's counsel and Plaintiff." *Jones*, 2007 WL 2085357, at *4; *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 119 (D.N.J. 2003). First, the Court must satisfy itself that Plaintiff's attorney is "qualified, experienced and able to conduct the litigation." *Smith*, 2007 WL 4191749, at *4 (citing *DalPonte v. American Mortgage Express Corp.*, 2006 WL 2403982, at *2 (D.N.J. Aug. 17, 2006)). Second, "the class representative must not have interests antagonistic to those of the class . . . ." *Szczubelek*, 215 F.R.D. at 119. As discussed above in the context of preliminary approval, Plaintiff's chosen counsel are qualified and experienced class action litigators, satisfying the first prong. (*See* Pl.'s Br. at 16; Fearon Decl., Ex. 2, Firm Resume ECF No. 50-1.) Moreover, Plaintiff's interests are wholly aligned with those of the class; Plaintiff suffered the same kind of injury as all class members and will receive a pro rata portion of the settlement based on the proposed "Allocation Formula" in the settlement agreement. (Pl.'s Br. at 16; Settlement Agreement, "Allocation Formula".) The class is adequately represented.

## B. The Rule 23(b) Requirements

The Court next considers the Rule 23(b)(3) predominance and superiority requirements. The Third Circuit has held that "predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a) . . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623–24 (1997)). If one element of a claim can only be proven by resort to individual treatment, class certification is inappropriate. *Newton*, 259 F.3d at 172. Because Plaintiff's claims arise out of a standard, uniform contract and an across-the-board rate increase which Defendant allegedly unlawfully applied to all class members, the Court finds that common issues sufficiently predominate here. *See Smith*, 2007 WL 4191749, at *4 ("In essence, the claims of everyone in the class are essentially identical.").

Turning to superiority, the Court must "balance, in terms of fairness and efficiency, the class action method of proceeding against alternative available methods of adjudication." *Id.* While Rule 23(b)(3) enumerates a number of factors courts may consider, this Court has held that "[c]lass treatment is superior where individual claims are small or modest." *Jones*, 2007 WL 2085357, at *4. Plaintiff alleges that all class members experienced relatively modest losses. (Compl. ¶¶ 73–76 (alleging that Plaintiff's actual damages were $255.44 and class members experienced at most $600 of loss due to the fee adjustment).) As Plaintiff persuasively explains, "in light of the small amount of recovery to each putative class member compared with the costs of litigation, individual merchants are less likely to be inclined to file individual actions or to be able to settle and recover on individual actions." (Pl.'s Br. at 18.) Moreover, should any particular class member who experienced a particularly significant fee adjustment be concerned about the settlement prejudicing their potential recovery, they may opt out of the class upon

8

receiving notice. Therefore, the Court finds that the settlement meets the superiority requirement and certifies the class as defined in the settlement agreement.

### III.     Approval of Proposed Class Notice

Having concluded that the settlement is fair, as a preliminary matter, and that class certification is appropriate, the Court must next evaluate the adequacy of the proposed class notice. "[T]he court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Smith*, 2007 WL 4191749, at *5. The notice must meet a host of specific requirements delineated in Rule 23(c)(2) and give class members a "fair opportunity to consider the proposed settlement and raise objections." *Jones*, 2007 WL 2085357, at *5. The form of the notice must meet due process requirements but is otherwise committed to the Court's discretion. *Mazon*, 2011 WL 6257149, at *3.

The parties here have agreed to a notice plan that provides the class with all of the information required under Rule 23. The Notice sets forth the nature of the action, the membership of the class, the nature of the claims brought, that a class member can choose to hire their own attorney, that a class member may opt out and be excluded from the settlement, how to opt out via mail or email, and the binding effect of a class judgment. The Notice is written in straightforward language and specifies the settlement amount and key terms. It further specifies that at the final hearing Plaintiff will apply for attorney's fees up to one-third of the settlement fund as well as expenses, and that Plaintiff will seek a service award of up to $15,000 for serving as class representative. (Fearon Decl., Ex. 1, Proposed Settlement Notice at 7–8, ECF No. 50-1.)

The Court must also assure itself that the method of notice is the best practicable. Plaintiff proposes that class members—who have all been identified by Defendant—be notified

9

by first-class mail at their business addresses, which "is unquestionably the best notice practicable under the circumstances." *Smith*, 2007 WL 4191749, at *5; *see also Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985); *Jones*, 2007 WL 2085357, at *5. The Court hereby approves the proposed Notice submitted by Plaintiff.

IV. Appointment of Class Counsel

As a final matter, Plaintiff requests that the Court appoint the law firm of Squitieri & Fearon, LLP as Class Counsel. In the class certification discussion above, the Court addressed the standard for adequacy of representation by class counsel. *See, e.g., Szczubelek*, 215 F.R.D. at 120 (collecting cases). As discussed above, the Court determines that this firm is sufficiently experienced in class action litigation to represent the class. The firm partners have extensive class action experience and have received praise for their diligence and results in a number of federal courts. (*See* Fearon Decl., Ex. 2, Firm Resume.) Moreover, the representation provided on behalf of Plaintiff thus far evidences the requisite skill to serve as Class Counsel going forward. (*See* Pl.'s Br. at 22 ("Plaintiff's counsel identified the claims brought here, successfully opposed a motion to dismiss, obtained discovery, and filed motions for class certification and partial summary judgment.").) The Court appoints Squitieri & Fearon, LLP as Class Counsel.

V. Final Approval Hearing

The Court's accompanying order will schedule a final approval hearing to determine whether to grant final approval of the proposed settlement.

**CONCLUSION**

For the reasons stated herein, Plaintiff's Motion is granted. An appropriate order will follow.

Date: 10/4/17

ANNE E. THOMPSON, U.S.D.J.

10