# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

------------------------------------------------------x
                                                      :
RUDEL CORPORATION, individually and :        No. 3:16-cv-02229-AET-LHG
on behalf of all other similarly situated,           :
                                                      :        *Electronically Filed*
                 Plaintiff,                           :
                                                      :
           v.                                         :
                                                      :
HEARTLAND PAYMENT SYSTEMS,            :
INC.,                                                 :
                                                      :
                 Defendant.                           :
                                                      :
------------------------------------------------------x


# MEMORANDUM IN SUPPORT OF PLAINTIFF'S
# UNOPPOSED MOTION FOR FINAL APPROVAL
# OF CLASS ACTION SETTLEMENT AND RELATED RELIEF

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND .............................................................................. 3

PROCEDURAL HISTORY ................................................................................ 4

THE SETTLEMENT ........................................................................................... 6

    A.  Class Definition ................................................................................. 7

    B.  Notice ................................................................................................ 7

    C.  Payment to Settlement Class Members ............................................ 7

ARGUMENT ...................................................................................................... 9

I.      THE IMPLEMENTED NOTICE PLAN
       COMPORTS WITH DUE PROCESS ...................................................... 9

II.     THE SETTLEMENT IS FAIR AND REASONABLE
       AND SHOULD BE FINALLY APPROVED ......................................... 11

    A.  Standards and Procedures for Final Approval of Class
       Action Settlements .......................................................................... 11

    B.  Application of the Girsh Factors ..................................................... 14

       1.  Complexity, Expense and Likely Duration of the Litigation ................. 14

       2.  The Reaction of the Class to the Settlement .......................... 15

       3.  The Stage of the Proceedings and the
          Amount of Discovery Completed .......................................... 16

4.  The Risks of Establishing Liability Favors Approval ............................17

5.  The Risk of Establishing Damages Favors Approval ............................18

6.  Risks of Maintaining Class Certification Through Trial........................19

7.  Ability of the Defendant to Withstand Greater Judgment......................21

8.  The Settlement Provides Benefits That Fall Within the Range
    of Reasonableness Given the Best Possible Recovery
    and the Attendant Risks of Litigation......................................................21

III. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES
    AND COSTS IS REASONABLE AND SHOULD BE
    APPROVED BY THE COURT ...................................................................23

A.  An Award of Attorneys Fees Is Appropriate in Class Actions
    and Is Within the Sound Discretion of the Court .........................................23

    1.  The Requested Award Is Supported
        by the Relevant Factors Under  .............................................................24

    2.  The Requested Fee Award Is Consistent with the
        Lodestar Cross-Check and Multiplier  ..................................................29

B.  Class Counsels Costs and Expenses Are Reasonable and Were
    Necessarily Incurred to Achieve the Benefit Obtained ...............................31

IV. A SERVICE AWARD FOR THE CLASS REPRESENTATIVE
    IS REASONABLE AND APPROPRIATE..................................................32

CONCLUSION...........................................................................................................35

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................30

*Bogosian v. Gulf Oil Corp.*,
   621 F. Supp. 27 (E.D. Pa.1985)........................................34

*Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*,
   494 F.2d 799 (3d Cir. 1974) ....................................... 12, 18

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981)............................................................12

*City of Burlington v. Dague*,
   505 U.S. 557 (1992)..........................................................30

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) .............................................34

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985).....................................12

*Fisher Brothers v. Phelps Dodge Industries, Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985).....................................22

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ..................................... passim

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..........................................................30

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009)......................................................... 18, 21

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)........................................................... 11, 25

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) .....................................................................29

*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002)..........................................................32

*In re Cendent Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .....................................................................17

*In re Computron Software*,
  6 F. Supp. 2d 313 (D.N.J. 1998)...............................................................15

*In re Elec. Carbon Prod. Antitrust Litig.*,
  447 F. Supp. 2d 389 (D.N.J. 2006).................................................... 29, 31

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................... 12, 23, 28

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241(3d Cir. 2009) ......................................................................34

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. CIV.A. 08CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ..............29

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)........................29

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) .....................................................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997) ...................................................... 9, 14, 31

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ....................29

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ........................................................ 13, 26

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................25

*In re Smithkline Beckman Corp. Secur. Litig.*,
   751 F. Supp. 525 (E.D. Pa.1990) ........................................................28

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................14

*Marcus v. BMW of N. Am.*,
   687 F.3d 583 (3d Cir. 2012) ........................................................20

*Perry v. FleetBoston Fin. Corp.*,
   229 F.R.D. 105 (E.D. Pa. 2005).....................................................33

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................. passim

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..................................................... 31, 32

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983)................................12

*Williams v. First Nat. Bank*,
   216 U.S. 582 (1910)...............................................................11

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------x
                                          :
RUDEL CORPORATION, individually and :          No. 3:16-cv-02229-AET-LHG
on behalf of all others similarly situated,   :
                                          :    *Electronically Filed*
                    Plaintiff,            :
                                          :
            v.                            :
                                          :
HEARTLAND PAYMENT SYSTEMS,                 :
INC.,                                     :
                                          :
                    Defendant.            :
                                          :
-------------------------------------------------------x
```

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND RELATED RELIEF

The Settlement now before the Court seeks to resolve claims against Defendant Heartland Payment Systems, Inc. related to its October 31, 2014 American Express Fee Adjustment and the accompanying increase to the American Express Discount Fee it charged merchants. The Parties reached the Settlement only after adversarial motion practice, formal and informal discovery, an extended mediation before the Honorable (ret.) William G. Bassler, and numerous rounds of arms-length negotiations. The Settlement provides Class members with an immediate recovery, without the need to submit claim forms, and

it eliminates the significant risks to Plaintiff and the Class, including the real risk that they could lose this case and recover nothing.

Unlike many class actions where the Class members are unknown and must file claim forms, in this action Plaintiff's counsel identified each member of the Class and has negotiated a settlement that allows the class members to receive their share of the settlement proceeds automatically and without the need to complete a claim form. Since the Court preliminarily approved the proposed Settlement in October, Plaintiff's counsel has provided notice to the proposed Class about the Settlement and the related relief that Plaintiff now seeks, and no Class member has objected to any portion of the relief that Plaintiff now seeks.  Moreover, only four (4) of the 67,117 Class Members have excluded themselves from the Settlement. As set forth in the accompanying declarations from Plaintiff's counsel and the Settlement Administrator, the response from the Class has been overwhelmingly positive and the proposed Settlement represents a substantial recovery for the Class. The Court should therefore find that the Settlement is fair, reasonable, and adequate and grant it final approval. Additionally, the Court should award Class Counsel the requested attorneys' fees and reimbursement of costs and grant Class Counsel's request for a service award to Plaintiff.

## FACTUAL BACKGROUND

Heartland Payments Systems, Inc.[1] processes credit and debit cards for small-to-medium sized merchants. For example, if a family uses a credit or debit card to pay for its bill at a restaurant, the restaurant cashier would swipe the family's card for the amount of the bill and Heartland would process that transaction, deducting the payment from the family's account, paying certain fees to the card company (called "interchange fees") and to the banks, deducting Heartland's fees (called "HPS Processing Fees"), and transferring the balance to the merchant's account. In early 2014, however, American Express introduced a new program, called "OptBlue," that reduced American Express's interchange fees and would make it less expensive for merchants to accept American Express cards. Along with this change in American Express interchange fees, Heartland indicated to its clients that its own fees, that is, HPS Processing Fees, on American Express transactions, would be equal to the rates it was charging for Visa and MasterCard transactions.

Between July 1, 2014 and October 31, 2014, as promised, Heartland matched HPS Processing Fees for American Express transactions to those for Visa

---

[1] In April 2016, following the conduct complained of in the Complaint, Global Payments Inc. ("Global") completed a merger with Heartland Payment Systems, Inc. with Heartland Payment Systems, LLC ("Heartland") operating as the surviving entity (and as a subsidiary of Global).  Heartland Payment Systems, LLC is the successor in interest by merger to Heartland Payment Systems, Inc.

and MasterCard. In each class member's October 2014 statement, however, Heartland represented that Heartland had incorrectly calculated the American Express rates that it charged and that Heartland was correcting that mistake. As a result, Heartland charged each class member an American Express Fee Adjustment to "correct [its] miscalculation." The fee adjustment retroactively increased the HPS Processing Fees that Heartland collected for American Express transactions occurring between July 1, 2014 and October 31, 2014. In total, Heartland collected $7,008,790.77 as a result of the October 31, 2014 American Express Fee Adjustment.

Plaintiff Rudel Corporation alleges that Heartland's correction was not a correction at all, but rather was an improper rate increase, which violated the uniform contract between Heartland and the merchants in the Class. Plaintiff sought to recover from Heartland the American Express Fee Adjustment that Heartland charged Plaintiff and the Class.

## PROCEDURAL HISTORY

On April 20, 2016 Plaintiff filed its Complaint challenging Heartland's American Express Fee Adjustment. Heartland moved to dismiss Plaintiff's claims and to strike Plaintiff's demand for a jury trial. In an Order granting in part and denying in part Heartland's motion to dismiss, the Court dismissed Plaintiff's claim based upon the New Jersey Consumer Fraud Act but the Court denied

4

Heartland's motion to dismiss Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. In denying the motion to dismiss those claims, however, the Court allowed Heartland to again raise its arguments at the summary judgment stage. The Court also denied Heartland's motion to strike Plaintiff's jury demand.

On April 21, 2017, after conducting discovery about the scope and size of the class, Plaintiff moved for class certification. While that motion was pending, the Court appointed the Honorable (ret.) William G. Bassler as a mediator in the case, administratively terminated Plaintiff's motion for class certification, and stayed all proceedings while the parties mediated the case. On June 13, 2017, the parties mediated the case with Judge Bassler but were unable to resolve it. The Court then lifted the stay and Plaintiff re-filed its motion for class certification and filed a motion for partial summary judgment. Heartland opposed both motions and cross-moved for summary judgment on all of Plaintiff's claims, arguing that the Court should enter judgment for Heartland on all claims brought for Plaintiff and the Class.

While those motions and the cross-motion were pending, the parties again mediated the case with the assistance of Judge Bassler and that process continued for approximately two months. Eventually, after multiple discussions and negotiations under Judge Bassler's supervision, the parties were able to agree on

the terms of a proposed settlement on August 7, 2017 and began negotiating and drafting the settlement agreement and related documents which they filed on September 22, 2017 with Plaintiff's motion for preliminary approval of the proposed Settlement.

The Court granted Plaintiff's motion for preliminary approval on October 4, 2017, holding that the settlement relief "falls within the range of approval." ECF No. 53, at *5 (Oct. 4, 2017). The Court also, after a thorough analysis, granted certification of the below-defined class, approved of the class notice plan, appointed Squitieri & Fearon, LLP as class counsel, and scheduled the final approval hearing for January 16, 2018. Class Counsel now moves for final approval of the Settlement, attorneys' fees and costs, and a service award to Plaintiff Rudel Corporation.

## THE SETTLEMENT

The Settlement was negotiated in good faith by experienced counsel who vigorously advocated for their respective clients. Negotiations extended over months and included an extended formal mediation process supervised by former federal judge, the Honorable William G. Bassler. The detailed class action Settlement Agreement and Release is attached as Exhibit 1 to the Declaration of Stephen J. Fearon, Jr. The terms of the Settlement preliminarily approved by the Court are set forth in the Settlement Agreement, and are summarized below.

## A. Class Definition

The Court has certified the following class:

> Merchants who processed with Heartland and were subject to an American Express Fee Adjustment in their October 2014 account statements, retroactively implementing an increased American Express Discount Fee between the period of July 1, 2014 and October 31, 2014 and setting new American Express pricing going forward.

Preliminary Approval Order, ECF No. 54, at *1 (Oct. 1, 2017).

## B. Notice

The notice plan included: (1) direct mailing to the 67,112 Settlement Class members via First-Class mail; (2) a toll-free telephone number where Settlement Class members could receive basic information about the settlement, such as how to exclude themselves from, or object to, the Settlement, or speak to a representative; (3) notice to the appropriate officials pursuant to 28 U.S.C. § 1715. *See* Opinion on Motion Preliminary Approval, ECF No. 53, at *9-10 (Oct. 4, 2017) (approving notice plan).

## C. Payment to Settlement Class Members

Pursuant to the preliminarily approved settlement, Heartland and Class Counsel have established a Settlement Fund in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000), which represents the limit and extent of Heartland's monetary obligations under the Settlement Agreement. This Settlement

Fund is to cover all costs, fees, and payments associated with the Settlement Agreement, including the following payments: (i) payments to class members; (ii) approved attorneys' costs and expenses; (iii) approved fee award to Class Counsel; (iv) approved settlement administration expenses; and (v) a service award to the settlement Class Representative.

In exchange for a release of all claims that result from, arise out of, are based upon, or relate to Heartland's October 31, 2014 American Express Fee Adjustment and Heartland's accompanying increase to the American Express Discount Fee, each class member that does not opt out of the Settlement will automatically receive a monetary payment from the Settlement Fund. The amount allocated to each class member will depend upon (i) the amount the class member paid for its October 31, 2014 American Express Fee Adjustment; (ii) the number of class members who opt out; (iii) the approved attorneys' costs and expenses; (iv) the approved fee award to Class Counsel; (v) the approved settlement administration expenses; and (vi) any service award to the settlement Class Representative. All monetary payments to class members will be made by check and sent by first class mail.

## **ARGUMENT**

## I.   **THE IMPLEMENTED NOTICE PLAN COMPORTS WITH DUE PROCESS**

The Court has already approved Plaintiff's notice plan and held that it was the "best practicable" notice under the circumstances. ECF No. 53, at *9-10 (Oct. 4, 2017). The Court should now find that Plaintiff's execution of the notice plan met the requirements of Rule 23 and due process. Under Rule 23, the Court must find that notice to the settlement class "is the best notice that is practicable under the circumstances, including individual notice to all members who can be identified though reasonable effort." Fed. R. Civ. P. 23(c)(2). The "best notice practicable" does not require receipt of actual notice by all class members to comport with Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to individuals who can be identified. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 233 (D.N.J. 1997). The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3 (2010)*.

As set forth in the accompanying Declaration from Christopher Amundson, a Project Manager of Analytics Consulting, LLC, the Settlement Administrator has mailed the notice in accordance with the Court's Preliminary Approval Order. *See* Amundson Decl.

On October 16, 2017, Class Counsel provided Analytics with a spreadsheet containing the names and addresses of each Class Member. Amundson Decl. at ¶ 3. Upon analyzing the class list, Analytics found that there were a number of duplicate entries on the list and eliminated those duplicates. *Id.* at ¶ 5. As a result, Analytics sent the Class Notice to all 67,117 Class Members via first class mail on November 3, 2017. *Id.* at ¶ 6. Prior to the mailing, Analytics established a toll-free telephone number, which was published within the Notice. *Id.* at ¶ 10. The interactive voice response (IVR) system answered calls and presented callers with a series of choices to provide basic information about the Settlement, the process to exclude oneself, or object to the Settlement or any portion of the related relief. *Id.* During business hours, callers could speak to a representative at Analytics and then after hours, callers could leave a message and receive a call back during business hours. *Id.*

After mailing the Notices, 6,412 Notices were returned to Analytics as undeliverable. *Id.* at ¶ 7. Through Analytics's research efforts, it was able to update mailing addresses for 88 of the Class Members. *Id.* In addition, 564 notices were returned by the Post Office with forwarding addresses, to which Analytics promptly mailed notice. *Id.* Although not required by the Preliminary Approval Order, Heartland provided Analytics with Class Member email addresses on December 7, 2017. *Id.* at ¶ 8. On December 8, 2017, Analytics implemented an

email outreach to all Class Members whose original Notice was returned as undeliverable and for whom it had an email address. *Id.* at ¶ 8. This outreach email was sent to 4,086 Class Members whose original mailed notice was returned as undeliverable. *Id.* As a result of the email outreach, 195 Class Members updated their addresses, to which Analytics promptly sent notice. *Id.* at ¶ 9.

In total, the executed Notice Plan went beyond what the Court had approved in its Preliminary Approval Opinion and Order, and was "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002).

## II.   THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED

### A.   Standard and Procedures for Final Approval of Class Action Settlements

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910). While a settlement spares litigants the uncertainty, delay, and expense of a trial, and simultaneously reduces the burden on judicial resources, settlements in class action cases "may only be approved 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In determining the fairness of a class action settlement, "the court plays

11

the important role of protector of the [absent class members'] interests, in a sort of fiduciary capacity, by approving appropriate representative plaintiffs and class counsel." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The determination of whether a proposed class action settlement warrants approval resides in the Court's discretion. *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 801 (3d Cir. 1974).

While the Court has discretion in determining whether to approve a settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Bryan*, 494 F.2d at 804.

In this case, the Court has already determined at the time of preliminary approval that all of the requirements of Rule 23 have been met. *See* ECF No. 53.

The only remaining issue is for the Court to make a final determination that the settlement is fair, reasonable, and adequate.

The Third Circuit has identified nine factors - the *Girsh* factors - that a trial court should consider when determining whether a proposed class action settlement warrants approval. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (*citing Girsh*, 521 F.2d at 157). These include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).[2]

---

[2] The *Girsh* factors are not exhaustive, however, and the Third Circuit has advised that the trial court may consider other relevant factors "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." " S*ullivan v. DB Investments, Inc.*, 667 F.3d 273, 320 (3d Cir. 2011) (*en banc*), (*quoting Pet Food*, 629 F.3d at 350). These factors include:

> [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or

Applying these factors in this case favors approving the settlement, and, therefore, the Court should grant final approval of the settlement.

## B.   Application of the *Girsh* Factors

### 1.  Complexity, Expense and Likely Duration of the Litigation

"The first *Girsh* factor 'captures the probable costs, in both time and money of continued litigation.'" *Sullivan*, 667 F.3d at 320 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)).  If this litigation were to proceed, it would be expensive, complex and would last a long time. Defendant is represented by experienced and well-regarded counsel who vigorously contested the claims and would have reargued and appealed many of the issues in the case if the parties had not agreed to settle it. Among other things, there is no doubt that Defendant would have appealed any class certification decision that favored Plaintiff and would have moved to decertify any class, creating additional expense and delay. Defendant consistently opposed Plaintiff's claims and refused to concede any wrongdoing. In fact, even in the Settlement Agreement Defendant refused to admit liability and stated that it agreed to the Settlement to "avoid the

---

likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998)).

further expense, risk, inconvenience, and distraction of burdensome and protracted litigation." Settlement Agreement at ¶ 69. Continued litigation would require significant judicial resources and would put an unnecessary burden on the parties, causing them to expend additional time and money pursuing the claims. Avoiding "unnecessary and unwarranted expenditure of resources and time benefit[s] all parties." *In re Computron Software*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998).

In addition, Defendant no doubt would have appealed any judgment that Plaintiff obtained in the case, causing further delay and expense. The proposed Settlement, on the other hand, removes the risk inherent in litigation and it provides benefits to the Settlement Class immediately and without the need for a lengthy claims process.

### 2.  The Reaction of the Class to the Settlement.

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan*, 667 F.3d at 321 (quoting *Prudential*, 148 F.3d at 318).

Pursuant to the Preliminary Approval Order, any settlement class member could opt out of the settlement or file an objection by January 2, 2018. *See* ECF No. 54 (Oct. 4, 2017). To date, no member of the Settlement Class has objected to the Settlement, and only four class members have excluded themselves. *See* Fearon

Decl., at ¶ 34. The "minimal number of objections and requests for exclusion" received from the class members is consistent with other class settlements approved in the Third Circuit. *Sullivan*, 667 F.3d at 321.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Sullivan*, 667 F.3d at 321 (quoting *Warfarin*, 391 F.3d at 537).  This factor has been satisfied here.

When the parties agreed to the Settlement, they had the benefit of full briefing and a decision on Heartland's motion to dismiss, they had completed significant discovery, including depositions, which helped them identify the scope of the class and the facts at issue in the case. They also had fully briefed the motion for class certification as well as competing motions and cross-motions for summary judgment. Moreover, they had been engaged in vigorous arms-length negotiations under the supervision of Judge (ret.) Bassler, a well-respected and very experienced mediator who fully explored with both sides the strengths and weaknesses of the claims and defenses in the action, Plaintiff's counsel also had the benefit of having conducted an intensive investigation both before and during

16

the pendency of this case, including interviewing former employees and customers of Heartland about the claims at issue in the case.

As a result, when the parties agreed to the proposed settlement, they had sufficient information to carefully weigh the strengths and weaknesses of their positions, the risks of success and failure, and the many vagaries of litigation. They were well-informed and used their significant experience handling similar complex cases to arrive at the proposed Settlement under the supervision of Judge Bassler. Accordingly, the third *Girsh* factor favors approving the Settlement.

### 4.  The Risks of Establishing Liability Favors Approval

The fourth *Girsh* factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them.'" *Sullivan*, 667 F.3d at 322 (quoting *In re Cendent Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. 2001)). When evaluating the benefits provided in a settlement versus the potential award at a trial, the Third Circuit has instructed that the settlement fairness factors must be judged "against the realistic, rather than theoretical, potential for recovery after trial." *Id.* As the Court is aware, Defendant denies liability and had moved for judgment in its favor. It also had opposed class certification, arguing that the Court should not certify the proposed class. Although Plaintiff believes there are strong arguments and persuasive authority to support its claims, there was a real risk that the Court could accept

Defendant's arguments, deny class certification, and enter summary judgment in favor of Defendant, leading to a real risk of no liability for Defendant and no recovery for Plaintiff and the Class. By settling now rather than proceeding to trial, Class Members avoid the risk of not being able to establish liability and avoid the delays, expense and uncertainty of further litigation. As such, this factor also favors the Settlement.

### 5.  The Risks of Establishing Damages Favors Approval

"As with the fourth *Girsh* factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Sullivan*, *supra*, 667 F.3d at 522 (quoting *Cendent*, 264 F.3d at 238-39). The Court must determine whether the proposed settlement is within a range that experienced attorneys could accept in light of the relevant risks of the litigation. The risk in proving damages strongly favors approving a settlement. *See, e.g.*, *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.)*, 494 F.2d 799, 802 (3d Cir. 1974) (given likelihood that plaintiffs would receive nothing if case went to trial, no abuse of discretion in approval of settlement for small percentage of plaintiffs' asserted loss); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 242 (E.D. Pa. 2009) (settlement approved where the allegations did not "lend themselves to straightforward damage calculations").

Even if Plaintiff succeeded in establishing Heartland's liability, Plaintiff would still have likely met significant challenges in proving damages. Although Plaintiff believes there are strong arguments and persuasive authority to support its damages model, Defendant forcefully disputed Plaintiff's damages calculation. Defendant argued that the alleged breach was only of a notice provision and therefore was immaterial and, at best, limited Plaintiff and the Class to nominal damages. Def's Cross-Motion for Summary Judgment, ECF No. 43-1, at *33-39 (July 24, 2017). Furthermore, presenting damages evidence can be complex, and though Class Counsel believe convincing evidence of damages could be provided and a judgment for all recoverable damages could be obtained, it is also possible that presenting damages evidence could lead to a battle of experts and that a jury might disagree with Plaintiff's presentation. See *Cendant*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe."). Accordingly, this factor favors approval.

### 6.  Risks of Maintaining Class Certification Through Trial

"The sixth *Girsh* factor 'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial' in light of the fact that 'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action.'" *Sullivan*, 667 F.3d at 322 (quoting

19

*Warfarin*, 391 F.3d at 537). Courts have noted, however, that this factor "may not be significant" to a court's determination of approving a settlement because "there will always be a 'risk' or possibility of decertification." *Prudential*, 148 F.3d at 321.

Although Class Counsel believe Plaintiff's claims are appropriate for class certification, there was a real risk here that the Court could find that this action was not appropriate for class certification. If the case had not settled, Defendant would have aggressively argued that the Court should not even reach the class certification issue because the contractual language of Heartland's agreements with customers precluded these claims.  Moreover, Heartland would have argued that class certification was inappropriate because, among other things, each merchant was different and had unique interactions with their Heartland representatives. And even if the Court had certified the proposed class, Defendant would have challenged it through motions for reargument and for decertification as well as through appeals, creating more risk to Plaintiff and the Class that Defendant would attempt to prevent Plaintiff from maintaining the class through trial. Class certification can always be reviewed or modified before trial, and a class may be decertified at any time. *See, e.g.*, *Marcus v. BMW of N. Am.*, 687 F.3d 583, 611 (3d Cir. 2012) (reversing certification of consumer class action). As a result, this risk favors approving the Settlement.

### 7. Ability of the Defendant to Withstand Greater Judgment

"The seventh *Girsh* factor considers 'whether the defendants could withstand a judgment for an amount significantly greater than the settlement.'" *Sullivan,* 667 F.3d at 323 (quoting *Cendant*, 264 F.3d at 240). Where no issue is raised as to whether a defendant can afford a larger judgment, this is a neutral factor, weighing neither in favor of nor against approving the settlement. *See, e.g.*, *Warfarin*, 391 F.3d at 538; *In re Am. Investors*, 263 F.R.D. 226, 242 (E.D. Pa. 2009). Here, there is no current indication that Heartland would not be able to withstand a more significant judgment. This factor therefore weighs neither in favor of nor against approving the Settlement.

### 8. The Settlement Provides Benefits That Fall Within the Range of Reasonableness Given the Best Possible Recovery and the Attendant Risks of Litigation

"The final two *Girsh* factors consider 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Sullivan*, 667 F.3d at 323 (quoting *Warfarin*, 391 F.3d at 538). "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" *Id.* at 323-24 (quoting *Prudential*, 148 F.3d at 322). In evaluating the settlement, the Court should "guard against demanding too large a settlement based on its view of the

21

merits of the litigation," because "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GMC Trucks*, 55 F.3d at 806 (citations omitted).

The fairness of the settlement process and of the Settlement Agreement itself also is shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See GM Trucks*, 55 F.3d at 787-88; *Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The settlement was not the product of collusive dealings, but rather was the result of extensive arm's-length negotiations by experienced counsel. *See* Fearon Decl., at ¶¶ 12-22. It is the opinion of Class Counsel that the $2.5 million settlement achieved in this case provides exceptional benefits to members of the Class, in light of the $7 million Heartland collected as a result of the fee at the center of this dispute and the risk of getting nothing were the Court to deny Plaintiff's class certification motion, grant Heartland's pending motion for summary judgment, or if Plaintiff were to lose at trial. Importantly, if the Court finally approves the Settlement, each class member will automatically receive a check for its share of the settlement benefits without a burdensome claims process. Fearon Decl., at ¶ 27.

The $2.5 million fund created for the benefit of the class is well within the range of reasonableness given the maximum potential recovery and the risk of getting nothing.

## III. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS  REASONABLE AND SHOULD BE APPROVED BY THE COURT

Class Counsel, having created and negotiated this comprehensive settlement, seeks an award of attorneys' fees of one-third of the Settlement Fund plus the costs Class Counsel incurred to pursue the claims, all without any guarantee of being paid for those fees or expenses. The fee award sought by Class Counsel includes all time spent to date and going forward. Class Counsel will not be making a separate fee petition for additional time and expenses going forward, including for time spent participating in the final approval hearing and answering class member questions. Class Counsel has invested significant time and has assumed substantial financial risks in prosecuting the class claims to achieve the Settlement. As discussed below, this Court should approve the requested award as fair, reasonable, and adequate.

### A.    An Award of Attorneys' Fees Is Appropriate in Class Actions and Is Within the Sound Discretion of the Court

The Court must undertake a "thorough judicial review" of fee applications in class action settlements. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995). There are two different methods for

determining fees in class action cases: the lodestar method and the percentage of recovery method. In this case, Class Counsel is seeking fees as a percentage of the recovery out of the Settlement Fund. While "the ultimate choice of methodology will rest within the district court's sound discretion," "each method has distinct advantages for certain kinds of actions, which will make one of the methods more appropriate as a primary basis for determining the fee." *In re Gen. Motors Corp.*, 55 F.3d at 821. Courts typically use the "percentage of recovery method" in common fund cases like this "on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *Id.* This method "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Id.* at 820, n.39. Here, because the Settlement creates a fund from which all class members who do not opt out will automatically be paid, Class Counsel seeks to recover the attorneys' fees from the fund under the percentage of recovery method.

### 1. The Requested Award Is Supported by the Relevant Factors Under *Gunter*

In a common fund case, where the fee and the award stem from the same source and the fees are based on a percentage of the proposed settlement, a district court should consider several factors in setting the fee award. *See Gunter v.*

24

*Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the . . . fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 129 (D.N.J. 2002). These factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *Id.*

Applying the first *Gunter* factor, the size of the fund created is $2,500,000.00 and it is to benefit 67,117 class members. The settlement represents a substantial recovery for the Class. Upon the Settlement becoming final, Class Members will automatically be mailed a check. No action is required on their part to obtain the benefit of the settlement, aside from depositing their checks. Furthermore, although "[i]n general, as the size of the settlement fund increases, the percentage award decreases," *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 95 (D.N.J. 2001), this case "does not involve a settlement award that is so large as to necessitate an automatic reduction in the percentage award." *Id.* (holding that one-third fee request equaling $1.5 million is reasonable in light of $4.5 million settlement). The substantial, automatic, and immediate recovery this

25

Settlement provides therefore strongly supports approving Class Counsel's fee request.

With respect to the second *Gunter* factor, the Third Circuit has recognized that the lack of objections to a fee request and positive views of Class Counsel's efforts, particularly from Class Members, are relevant to evaluating the fairness of a fee request. *See, e.g.*, *In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that the fact that few class members objected, despite a "considerable financial incentive to object had they believed the fees were excessive," supported the requested fee). Here, the Notices mailed on November 3, 2017 informed Class Members of the details of the Settlement, including that Class Counsel intended to submit a fee application seeking up to one-third of the Settlement amount, and not a single class member has objected to the fee request (or to any other portion of the requested relief). This factor supports Class Counsel's fee request.

The third, fourth, and sixth factors all also weigh in favor of approving Class Counsel's fee request. Class action litigation requires a significant outlay of time, human resources, and money to properly serve the client and the putative class. There was no guarantee of success in this matter. In fact, Plaintiff faced substantial risks, including the risks associated with interpreting the contract upon which Plaintiff's claims were based and with the Court possibly applying the voluntary payment doctrine to preclude the claims here. Plaintiff only settled the case after

prolonged mediation sessions under the direction of a well-respected and experienced retired federal judge while Plaintiff's motion for class certification and competing motions for summary judgment were pending. Achieving this Settlement required attorneys with significant knowledge and experience in class actions and consumer laws, as well as with an understanding of the complex credit card processing industry. Class Counsel investigated and brought the claims when no other firm in the country did so and Class Counsel devoted the resources necessary to litigate this case effectively, and will continue to commit the time and resources necessary until the case is finally resolved. The firm has more than adequate resources to prosecute this case and has considerable experience in class action litigation as set forth in the accompanying Declaration. *See* Fearon Decl., Exh. 2 (Firm Resume).

Class Counsel prosecuted this case efficiently to meet all of the scheduling and time constraints imposed by the Court and by the relevant substantive law and procedural rules. Indeed, Plaintiff asked and received permission from the Court to file its motion for Class Certification before the original August 11, 2017 deadline. *See* ECF No. 25 (April 18, 2017) (rescheduling deadline for class certification motion to April 21, 2017). Similarly, when mediation initially failed, Plaintiff immediately asked that the Court lift the stay and allow Plaintiff to re-file its class certification motion (which the Court had administratively terminated pending

27

mediation) and for permission to file a motion for partial summary judgment against Heartland. ECF No. 31-32. Class Counsel has aggressively pursued these claims for the benefit of the Class with no assurance of ever being paid in the case.

Moreover, as relates to the fifth *Gunter* factor, Class Counsel took this matter upon a complete contingency fee arrangement with the Plaintiff. Class Counsel have received no compensation during the course of this litigation and have incurred substantial expenses litigating on behalf of the Class, which they risked losing had Defendant prevailed. There was a real possibility that Class Counsel would achieve no recovery and hence no compensation. By taking on this case, Class Counsel was also prevented from doing other work for which it could have been paid while pursuing these claims. Fearon Decl. at ¶ 48. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result it achieved. The financial risks borne by Class Counsel fully support the fee requested.

As to the seventh and final *Gunter* factor, courts within the Third Circuit generally award fees in the range of nineteen percent (19%) to forty-five percent (45%) of settlement funds. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (citing *In re Smithkline Beckman Corp. Secur. Litig.,* 751 F. Supp. 525 (E.D. Pa.1990)); *see also In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J.

Nov. 15, 2016) (awarding 30% fee); *In re Merck & Co., Inc. Vytorin Erisa Litig.*,
No. CIV.A. 08CV-285DMC, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010)
("review of 289 settlements demonstrates "average attorneys' fees percentage [of]
31.71% with a median value that turns out to be one-third") (*quoting In re
Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL
3008808, at *15 (D.N.J. Nov. 9, 2005)); *In re Elec. Carbon Prod. Antitrust Litig.*,
447 F. Supp. 2d 389, 408 (D.N.J. 2006) (surveying common fund fee awards
approved in the Third Circuit, and finding that "the requested percentage of 26% is
not excessive judged by these norms.").

In this case, Class Counsel is seeking attorneys' fees out of the Settlement
Fund in the amount of one-third (after the reimbursement of $18,495.76 of costs
and expenses), or $827,168.08. This amount is well within the range of approved
awards in other common fund cases.

### 2. The Requested Fee Award Is Consistent with the Lodestar Cross-Check and Multiplier

In addition to looking at the proposed fee award as a percentage of the
settlement fund, the Third Circuit has suggested that district courts cross-check the
percentage award against the "lodestar" – which is determined by multiplying the
number of hours reasonably worked on the case by a reasonable hourly rate for
such services – to help ensure the reasonableness of the fee. *In re AT & T Corp.*,
455 F.3d 160, 164 (3d Cir. 2006).

29

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Gunter*, 223 F.3d at 195 n.1. The lodestar is presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Certainly, the lodestar may be reduced if a plaintiff so agrees, or if "billing judgment" so warrants. *See Hensley*, 461 U.S. at 433. But any other reduction may only be made where there is conclusive evidence that the hours were not reasonably expended or the requested hourly rate is not reasonable. *See, e.g., Hensley*, 461 U.S. at 434 (hours not reasonable if excessive, redundant or unnecessary); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (rates to be calculated according to prevailing market in the relevant community).

Class Counsel is seeking fees in the amount of $827,168.08, or one-third of the Settlement Fund after deducting the reimbursement of Class Counsel's costs and expenses. As demonstrated by the Declaration of Stephen J. Fearon, Jr., Plaintiff's attorneys have spent a total of 2,049.8 hours, resulting in a lodestar of $1,156,180.50, at current rates. Fearon Decl., at ¶ 46. This lodestar does not account for the substantial work that Class Counsel will be required to perform going forward in this matter, including attending the fairness hearing and overseeing the implementation of the Settlement.

30

Class Counsel therefore is seeking a fee award that is less than the lodestar. The multiplier that is sought by Class Counsel is 0.715. This is calculated by dividing the amount sought in fees ($827,168.08) by the total lodestar ($1,156,180.50).

A 0.715 multiplier is below the low end of the range of multipliers approved in similar consumer class action common fund cases. *See, e.g.*, *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998) (noting that multipliers ranging from 1.0 to 4.0 have often been awarded); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F.Supp.2d 389, 410 (D.N.J. 2006) (multipliers ranging from 1.0 to 4.0 are "frequently awarded in common fund cases"); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (noting approval of multiplier of 2.99 in a case that "was neither legally nor factually complex") (quotation omitted); *Varacallo*, 226 F.R.D. at (2.83 multiplier approved).

The time spent by Class Counsel litigating this matter was reasonably spent and supports the requested fee award.

**B.     Class Counsel's Costs and Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

It is well-established that counsel who have created a common fund for the benefit of a class are entitled to be reimbursed for out-of-pocket expenses reasonably incurred in creating the fund. *In re Cendant Corp., Derivative Action*

31

*Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). Class Counsel's unreimbursed

expenses of $18,495.76 were reasonably incurred and necessary to representing the

Class. Fearon Decl. at ¶¶ 51-51. The expenses primarily include costs for travel to

meet witnesses and for depositions as well as for lodging expenses, copying, court

reporters, deposition transcripts, and for mediation. *Id.* As set forth in the

accompanying Declaration, Class Counsel carefully controlled expenses and

avoided unnecessary charges, especially because there was no guarantee that Class

Counsel would ever be reimbursed for its expenses. *Id.* at ¶ 51. Accordingly, the

Court should approve reimbursement of Class Counsel's expenses.

## IV.    A SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS REASONABLE AND APPROPRIATE

Class Counsel requests that the Court approve a service award in the amount

of $15,000 for the sole class representative, Rudel Corporation, in recognition of

its extensive participation in this litigation and its efforts successfully pursuing

these claims for the Class. Without Rudel bringing and pursuing the case, there

would be no recovery for the Class.

There is "ample authority in this and other circuits for the approval of

incentive awards." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207,

257 (D.N.J. 2005) (collecting cases). Payment of a service award lies within the

discretion of the Court upon consideration of "the risk to the plaintiff in

commencing suit, both financially and otherwise; the notoriety and/or personal

difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005).

As the sole class representative, Rudel Corporation actively pursued the Class's interests by filing suit as a named plaintiff on behalf of all merchants that Heartland charged the fee at issue in this case. It was the only plaintiff and the only proposed representative in the case and it alone subjected itself to discovery, including a very difficult deposition, in the case. Fearon Decl. at ¶ 52. Rudel Corporation participated in drafting the pleadings and pursuing the litigation for the Class. *Id.* It retained Class Counsel, participated in all stages of the litigation, and consistently acted in the best interests of the Class. *Id.* Ms. Lucille Hooker of Rudel Corporation repeatedly met with Class Counsel before and during the case, and traveled to New Jersey for her testimony when Heartland refused to schedule her deposition in Texas, where Rudel (and Ms. Hooker) runs a busy restaurant. *Id.* Without the efforts by Rudel, the more than 67,000 class members would not have the benefit of this Settlement.

A $15,000 service award to Plaintiff is well within the range of service awards approved in similar cases. *See In re Ins. Brokerage Antitrust Litig.,* 579

F.3d 241, 285 (3d Cir. 2009) (finding that the court did not err in granting final approval of a settlement that included $150,000 in service awards distributed between fifteen named plaintiffs); *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (E.D. Pa.1985) (granting service awards of $20,000 to each class representative); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) (approving service awards of $10,000 each to nine named Plaintiffs when the awards were agreed to and did not diminish the class recovery); *Varacello,* 226 F.R.D. at 257-58-29 (collecting cases awarding class representatives a range from $1,000 to $10,000). Furthermore, the Notice informed all Class Members that Class Counsel intended to request a $15,000 service award for Rudel and not a single Class Member objected.  *See* Amundson Decl., Exh. A, at Question 16 ("Will the class representative get anything?"). Accordingly, the Court should approve the proposed service award of $15,000 to Rudel Corporation for its service and the benefits its efforts conferred upon the Class.

## CONCLUSION

For the reasons stated above, the Court should grant final approval to the Settlement, award the requested attorneys' fees and costs, and grant Plaintiff the requested service award.

Dated:  December 18, 2017      By:   /s/     *Raymond N. Barto*

                                   Raymond N. Barto

**SQUITIERI & FEARON, LLP**

STEPHEN J. FEARON, JR.
RAYMOND N. BARTO
32 EAST 57TH STREET, 12TH FLOOR
NEW YORK, NY 10022
TELEPHONE:      (212) 421-6492
FACSIMILE:      (212) 421-6553
STEPHEN@SFCLASSLAW.COM
RAYMOND@SFCLASSLAW.COM

*Counsel for Plaintiff and the Class*

35