UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUDEL CORPORATION, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> HEARTLAND PAYMENT SYSTEMS, INC., <br><br> Defendant. | Civ. No. 16-2229 <br><br> OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

Before the Court is Plaintiff's motion for final approval of class settlement. (ECF No. 55.) The motion is unopposed. The Court has reviewed the moving papers and has decided the motion after oral argument at a Fairness Hearing (ECF No. 56). For the following reasons, the motion for final approval of class settlement is granted, with relief as modified herein.

## BACKGROUND

Lead Plaintiff Rudel Corporation ("Plaintiff") brings this class action against Defendant Heartland Systems, Inc. ("Defendant") for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff runs Jacala Mexican Restaurant in San Antonio, Texas. (Compl. ¶ 20, ECF No. 1.) Defendant processes credit and debit card payments for small-to-medium-sized merchants. (*Id.* ¶¶ 2, 24–26.) Plaintiff's restaurant contracted with Defendant from 2008 to 2014. (*Id.* ¶ 21.) Plaintiff alleges that in June 2014, Defendant sent a letter to its merchants that Defendant would process American Express cards

1

with smaller fees. (*Id.* ¶¶ 57–62.) Between July 1, 2014 and October 31, 2014, Defendant charged American Express fees at this discounted rate. (*Id.* ¶¶ 64–68.) In October 2014, Defendant retroactively charged Plaintiff an "American Express Fee Adjustment" of $255.44, without prior agreement or notice; other class members experienced similar charges. (*Id.* ¶¶ 69–74.) Defendant represented that this charge was an adjustment to correct a miscalculation. (*Id.* ¶¶ 77–78.) Plaintiff alleges it was, instead, an improper rate increase which violated the uniform contract between Defendant and the merchants in the class. (*Id.* ¶¶ 79–88.) Discovery revealed Defendant gained just over $7 million from the fee adjustment. (Pl.'s Br. at 4, ECF No. 55-1.)

Under the terms of the settlement, Defendant deposited $2.5 million to a common fund. (*Id.* at 7, 25.) Upon final approval, after the deduction of costs, fees, and awards, Class Members will automatically be mailed a check for their pro rata overcharges pursuant to the distribution plan. (*Id.* at 25; *see* Fearon Decl., Ex. 1 ¶¶ 51–52, 57–60 ("Settlement Agreement"), ECF No. 55-3.) Class counsel requests attorneys' fees amounting to one-third of the common fund ($827,168.08, plus reimbursement of $18,495.76 in costs).[1] (Pl.'s Br. at 29.) Class counsel also seeks a $15,000 service award for the Lead Plaintiff. (*Id.* at 32.)

On October 4, 2017, the Court preliminarily approved the settlement, certified the settlement class, appointed class counsel, approved class notice, and scheduled a Fairness Hearing for 10:00 AM on January 16, 2018. (ECF Nos. 53, 54.) At the hearing, the Court heard

---

[1] The Settlement Agreement allows class counsel to seek a fee award up to one-third of the common fund *after* the deduction of counsel's expenses, settlement administration costs, and a service award to Lead Plaintiff. (Settlement Agreement ¶¶ 51–52, 57–60.) Counsel's calculation of $827,168.08 fails to take into account any reduction by a potential service award to the Lead Plaintiff. If the Court were to grant the requested $15,000 service award in addition to counsel's expense reimbursement of $18,495.76, the one-third attorney fee would be reduced by $5,000 ($822,168.08). Counsel has not documented any additional costs of settlement administration, and the Court assumes all future costs will be paid from the attorneys' fee awarded herein.

oral argument on whether the settlement is fair, adequate, and reasonable; reasonable fees and costs for class counsel; and a reasonable incentive award for Lead Plaintiff. The Court reserved on final approval and calculation of fees and costs, and now addresses those points.

## DISCUSSION

I. Notice, Objections & Opt-Outs

As an initial matter, the efforts at notice here were thorough—even more extensive than the Court required at the preliminary approval stage. (Op. at 9–10, ECF No. 53.) Out of 67,117 notified Class Members, to date no member of the class has objected to the settlement, class counsel fees, or lead plaintiff award, and only four (4) members have opted out of the class. (Pl.'s Br. at 2, 15.) Less than ten percent of notices were returned as undeliverable. About ten percent of the undeliverable notices were re-mailed to new addresses. The settlement administrator also sent 4,086 emails to Class Members whose original mailed notices were returned as undeliverable, which prompted 195 Class Members to update their mailing addresses and receive mailed notices. (*Id.* at 10–11.) The Court determines that Plaintiff's execution of the notice plan met the requirements of Federal Rule of Civil Procedure 23 and due process.

II. Final Settlement Approval

Federal Rule of Civil Procedure 23(e) requires a proposed class action settlement to be "fair, reasonable and adequate." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998). The "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity," *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*G.M. Trucks*"), "assuring that the settlement represents adequate compensation for the release of the class claims," *id.* at 805.

A proposed class action settlement is entitled to a presumption of fairness where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). A court may give "considerable weight" to counsel's "assessment of the settlement as fair and reasonable . . . ." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003).

The Third Circuit has identified nine factors to assist courts in determining whether a proposed settlement is "fair, adequate and reasonable." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These factors are:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Id.* The Court already granted preliminary approval after a thorough analysis (Op. at 3–5, ECF No. 53), and, as discussed herein, nothing has disturbed that earlier conclusion.

On balance, the *Girsh* factors weigh in favor of approving the settlement here. Though not the most complex litigation, until the successful mediation in August 2017 Defendant aggressively defended this action, making the potential for protracted litigation and heightened expense likely. (*See, e.g.*, ECF Nos. 7, 13, 42, 43). This post-discovery, post-mediation settlement conducted through arms-length negotiation by skilled class action attorneys is a favorable outcome to what would otherwise be potentially drawn-out litigation. The class has reacted uniformly favorably to the proposed settlement; only four members of the more than 67,000 persons notified have opted out, and no member has filed any objection to any portion of

the settlement agreement. Though this action was originally filed only 20 months ago, the litigation had already reached the late stage of cross-motions for summary judgment at the time a settlement was reached through mediation. Counsel thus "possessed sufficient information to assess the relative strengths and weaknesses of their case and reach a fair bargain." *In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 WL 4020862, at *5 (D.N.J. Sept. 9, 2011).

The risks of establishing liability were significant, as Defendant zealously defended the case and has the resources to continue to do so. Although as an evidentiary matter there might have been little difficulty in establishing damages because of Defendant's recordkeeping, at summary judgment Defendant contested Plaintiff's right to damages beyond nominal damages as a matter of law (*see* Def.'s Br. Opp'n to Pl.'s Mot. Summ. J. at 33–39, ECF No. 43). Thus, the risk of establishing damages weighs in favor of settlement. Though the risks of maintaining a class action through trial are not particularly significant, and Defendant undoubtedly could withstand a greater judgment, the reasonableness of the settlement fund in light of best recovery and risks of litigation cannot be overstated. The maximum potential recovery based on records produced during discovery was just over $7 million, and class counsel negotiated a settlement fund of $2.5 million. This is a significant benefit to the class. Coupled with the ease of administration of this particular settlement, where class members need not file claim forms and will simply receive pro rata checks for their alleged individualized overcharges, the reasonableness of the fund amount militates in favor of approval of the settlement as fair, adequate, and reasonable. On balance, the *Girsh* factors weigh heavily in support of approval.

### III. Attorneys' Fees & Costs

To determine whether the request for attorneys' fees is reasonable, courts conduct a two-part analysis: (1) the percentage-of-recovery factors; and (2) the lodestar multiplier cross-check.

### A. *Percentage-of-recovery Factors*

In common fund cases, courts conduct a percentage-of-recovery analysis that weighs these factors:

(1) The size of the fund created and the number of persons benefitted;
(2) The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
(3) The skill and efficiency of the attorneys involved;
(4) The complexity and duration of the litigation;
(5) The risk of nonpayment;
(6) The amount of time devoted to the case by plaintiffs' counsel; and
(7) The awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) ("*Rite Aid*"). The factors should not be applied in a formulaic manner, and it is within a court's discretion to determine that one factor outweighs the rest. *See, e.g.*, *Segen v. OptionsXpress Holdings Inc.*, 631 F. Supp. 2d 465, 475–76 (D. Del. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (rejecting class counsel's request for a 25% fee award, and finding a reasonable award of attorneys' fees was 8% of the total recovery).

Plaintiff argues that the factors support approval of a fee award of one-third of the common fund (which Plaintiff calculates as $827,168.08).[2] (Pl.'s Br. at 23–29.) Weighing these factors, the Court finds that Plaintiff's counsel (1) created a significant benefit to the more than 67,000 identified Class Members by negotiating for a $2.5 million fund, which would not have occurred without counsel's efforts; (2) there are no objections by Class Members to awarding Plaintiff's counsel a significant percentage of the recovery; (3) a significant percentage is reasonable in light of the skill and efficiency Plaintiff's counsel exhibited in bringing about the result, (5) counsel's contingency arrangement (*see* Pl.'s Br. at 28) reflects that counsel incurred a

---

[2] The Court again notes this amount is in error because it fails to take into account the potential reduction by a service award to Lead Plaintiff. *See supra* note 1.

risk of non-payment attendant to litigation;[3] and (6) Plaintiff's counsel spent significant time on the matter (*see* Fearon Decl. ¶¶ 46–47 (claiming 2049.8 hours spent across one partner and three associates)).[4] However, (4) the claims at issue were not as complex as counsel attests. (*See* Pl.'s Br. at 26–27.) This case involves a contract dispute and well-documented fee revision, not the kind of complex antitrust and securities cases Plaintiff repeatedly cited as comparable matters (*see, e.g., id.* at 28–29), which involve, for example, scienter requirements that pose steep evidentiary obstacles, *see, e.g., In re AT&T Corp.*, 455 F.3d 160, 170–71 (3d Cir. 2006) (noting the "difficult task of proving . . . actual knowledge"). Moreover, a proposed settlement was reached by August 2017 (*see* ECF No. 48), after only 16 months of litigation and mediation. Viewed holistically, this factor weighs against such a high percentage award.

The final factor requires comparison to similar cases, and there are significant grounds to distinguish this case from those Plaintiff has cited. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 743 (3d Cir. 2001) ("Other cases in which higher percentages were awarded are so dissimilar factually and legally from this case that they cannot be relied upon . . . ."). In the abstract, the percentage amount (one-third) is supported by examples in case law. (*See* Pl.'s Br. at 28–29 (collecting cases from Third Circuit courts approving attorneys' fees between nineteen and forty-five percent).) However, the cases cited by counsel skew slightly lower than a one-

---

[3] While the Court respects counsel's class action experience and expertise, counsel seems to overstate the financial risk incurred and difficulties faced; for example, the Court is skeptical that damages would have been difficult to prove (*see* Pl.'s Br. at 19), given that Defendant maintained precise records with respect to each Class Member's charges, which are the basis for the ultimate settlement distribution plan.

[4] At the Fairness Hearing, Mr. Fearon asserted that counsel omitted from its calculation any hours spent by paralegals in connection with the litigation, in an effort to make a reasonable request. The Court appreciates counsel's efforts to claim only reasonable hours expended, but nevertheless finds it difficult to accept without inquiry the hours presented, given the limited scope and duration of this litigation.

third award, more in the range of 20–30 percent. Additionally, in the cited cases, "extensive time and effort exerted by the attorneys and the existence of complex legal and factual issues warranted higher fee awards . . . ." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 738. This case is unlike years-long, factually dense, and legally intricate securities fraud, antitrust, or ERISA cases resulting in common funds more than ten times the magnitude here. *See, e.g., In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) (awarding counsel's requested one-third fee in complex ERISA litigation, with common fund amount of $41.5 million); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (approving attorneys' fee request of $5.7 million, about 26% of the $21.9 million common fund, in complex antitrust litigation).

The facts at bar here are neither complex nor genuinely disputed; both parties moved for summary judgment after the first round of mediation proved unsuccessful. (*See* ECF Nos. 35, 36, 43.) Moreover, the central legal issues are straightforward: contract interpretation and consideration of equitable doctrines. Balancing the limited scope, duration, and complexity of this case against counsel's respectable efforts and the substantial result for the Class, the Court determines that an appropriate fee award is twenty-five percent (25%) of the common fund after the deduction of costs and any incentive award to Lead Plaintiff. *See, e.g., In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *26–29 (D.N.J. Nov. 15, 2016) (approving 30%, instead of the requested one-third, award from $3 million common fund in securities fraud settlement).

### B. Lodestar Multiplier Cross-Check

After weighing the *Gunter* factors listed above, courts cross-check the proposed attorneys' fees by comparing them to the amount counsel would have earned under the lodestar method. *Rite Aid*, 396 F.3d at 300; *In re AT&T Corp.*, 455 F.3d at 164. The lodestar is calculated

by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid*, 396 F.2d at 305. The requested fee award is then divided by the lodestar. The result is the lodestar multiplier. The Third Circuit recognizes that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Prudential*, 148 F.3d at 341. However, "when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *Rite Aid*, 396 F.3d at 306.

As mentioned above, class counsel attests to a total of 2,049.8 hours expended on the case, with a partner hourly rate of $750 and an associate hourly rate of $450. (*See* Fearon Decl. ¶ 46.)[5] In finding these hours to be reasonable, the Court highlights the significant motion practice involved in this case. After filing the Complaint in April 2016, Plaintiff survived a motion to dismiss in August 2016 (*see* ECF Nos. 12, 14, 15); twice moved for class certification (ECF Nos. 26, 27, 33, 34), which Defendant vigorously opposed (ECF No. 42); and moved for summary judgment (ECF Nos. 35, 36), which Defendant opposed, cross-moving for summary judgment (ECF Nos. 42, 43). Class counsel also participated in multiple rounds of mediation with retired Judge Bassler. Although these hourly rates seem sizeable given the small size of this firm and their geographic location,[6] they "reflect the experience and skill of the lawyers

---

[5] The Court notes that there are errors in the arithmetic in the Fearon Declaration (*see* Fearon Decl. ¶ 46); based on the inputs provided, the computations are slightly off for all four attorneys. However, the errors result in a minute difference of roughly $20 in the total lodestar amount.

[6] To the extent the hourly rate of the attorneys is unreasonable for their market, the lodestar will decrease and, in turn, the lodestar multiplier will increase. For example, at a partner hourly rate of $600 instead of $750 and an associate hourly rate of $300 instead of $450, the total lodestar amount would be $848,730, with a lodestar multiplier of 0.975. This amount would still be well within the Third Circuit's range of approval.

9

involved and are comparable to rates the courts have approved in similar cases in other metropolitan areas." *In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 WL 4020862, at *7. Using their documented hours and hourly rates, class counsel calculates their lodestar market rate compensation to be $1,156,180.50. Dividing the requested fee award by this lodestar gives a lodestar multiplier of 0.715. (Pl.'s Br. at 30–31.) With the Court having further reduced the percentage of recovery to 25%, the lodestar multiplier is even smaller; neither multiplier is inconsistent with Third Circuit precedent. This counsels in favor of awarding counsel fees at a significant percentage of recovery, further bolstering the Court's decision to award attorneys' fees at 25% of the common fund amount.

### C. Counsel Costs/Expenses

"Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). Class counsel requests the following reimbursement:

1. Travel (air and/or ground transportation, lodging, etc.) — $8,012.32
2. Case-Specific Meals including while traveling — $1,591.47
3. Service Fees — $305.99
4. Court Costs and Filing Fees — $68.00
5. Mediator: William G. Bassler — $7,500.00
6. Postage — $64.74
7. Court Reporter and Transcripts — $953.24
   - **TOTAL — $18,495.76**

(Fearon Decl. ¶ 50.) Counsel avers that these expenses were "incurred in connection with this litigation, and [were] reasonable and necessary to advance the litigation . . . ." (*Id.* ¶ 51.) Most of the expenses seem reasonable and appropriately incurred. No underlying firm books and records have been produced, but counsel attests in his declaration that there is adequate documentation.

Line item two, "Case-Specific Meals including while traveling," raises concern. Counsel has not cited case law approving such an expense; courts have approved travel and lodging costs, *see, e.g., In re Cendant Corp.*, 232 F. Supp. 2d at 343–44, but not meals unrelated to travel. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Plaintiffs' Counsel has specifically excluded from its application requests for certain expenses—meals and transportation not incidental to travel—which previously have been deemed beyond the scope of reasonableness."). Without any specific parsing of meals incidental to travel versus those entirely unrelated to travel, the Court declines to approve this line item, reducing the reasonable reimbursed expenses to $16,904.29.

III.   Service Award to Lead Plaintiff

"[Incentive] awards are granted to reward the public service performed by lead plaintiffs." *In re Cendant Corp.*, 232 F. Supp. 2d at 344. As confirmed in the distribution section of the settlement agreement, because "the requested incentive award[] would be paid solely from the [common] fund, depleting the financial resources for Class Members, this Court carefully reviews this request to ensure its fairness to the Class." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005). "[I]ncentive awards will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." *Id.* at 258.

Class Counsel requests an incentive award of $15,000 for class representative Rudel Corporation, as allowed by the settlement agreement, "in recognition of its extensive participation in this litigation and its efforts successfully pursuing these claims for the Class." (Pl.'s Br. at 32.) Class Counsel attests to significant efforts expended by Rudel Corporation. (*Id.* at 33; Fearon Decl. ¶ 52.) No Class Member objected to the award. Nevertheless, it is not clear to

the Court that Rudel Corporation incurred risks to warrant such a substantial award out of the common fund. Based on the cases Plaintiff cites (*see* Pl.'s Br. at 34), awards ranging from $1,000 to $10,000 are more common incentive awards in similar cases. *See, e.g., In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *11 (D.N.J. Oct. 3, 2016) (approving incentive awards of $3,500 to each of the four Class Representatives); *Varacallo*, 226 F.R.D. at 259 (awarding $3,000 to a named plaintiff minimally involved in case preparation, who attended a deposition, produced documents, and attended the fairness hearing). Though Defendant does not object to an incentive award at this juncture (indeed, doing so is proscribed by the Settlement Agreement), in opposition to a prior motion to certify class, Defendant raised legitimate concerns about the extent to which Plaintiff was involved in, knowledgeable about, and truly directing this litigation. (*See* Def.'s Br. Opp'n to Mot. Certify Class at 9–15, 16–24, ECF No. 42.) The Court has independently reviewed the deposition Defendant cited, and finds it appropriate to reduce the requested award based on Plaintiff's own representations therein. In recognition of Plaintiff's involvement in the case, and cabined by the need for a substantial basis to justify such an award, the Court grants Rudel Corporation a $5,000 service award.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion is granted, with relief as modified. The Court finds the Settlement Agreement fair, reasonable, and adequate. The Court has determined class counsel merits a 25% fee award from the Settlement Fund, to be applied after deducting $16,904.29 in attorney expenses and $5,000 as an incentive award to Plaintiff. The counsel fee thus amounts to $619,523.93. The total attorney recovery, including the $16,904.29 in approved expenses and costs, is $636,428.22. All future expenses of settlement administration shall be

paid out of the attorney fees and costs awarded herein. An amount of $1,858,571.78 remains for distribution to Class Members out of the Settlement Fund. An appropriate Order will follow.

Date: 1/22/18

ANNE E. THOMPSON, U.S.D.J.

13